# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA**,

        **Plaintiff**,

v.

**DANIEL LEE DUKEWITS (01)**,

        **Defendant**.

Case No. 17-40113-01-DDC

---

## MEMORANDUM AND ORDER

Defendant Daniel Dukewits has asked the court to reduce his sentence under Amendment 821 to the United States Sentencing Guidelines. The government doesn't oppose the proposed reduction. Indeed, Mr. Dukewits is eligible for a reduced sentence under Amendment 821. But that's only one part of the inquiry. The relevant sentencing factors don't favor reducing Mr. Dukewits's sentence. The court explains this conclusion, below.

## I.    Background

Mr. Dukewits pleaded guilty to escape from custody and bank robbery. This wasn't Mr. Dukewits's first time robbing a bank. In 2010, Mr. Dukewits was sentenced to 125 months' imprisonment with five years of supervised release following an armed bank robbery conviction in the District of Kansas. Doc. 19 at 4 (PSR ¶ 12). To complete this sentence, Mr. Dukewits arrived at a residential re-entry center in June 2017. *Id.* (PSR ¶ 13). In November 2017, Mr. Dukewits removed his GPS tracking device and escaped the re-entry center. *Id.* at 5 (PSR ¶ 15). Shortly after his escape, Mr. Dukewits robbed Azura Credit Union in Topeka. *Id.* (PSR ¶ 16). When discovered by Topeka law enforcement, Mr. Dukewits led officers on a high-speed chase that, at times, reached speeds of 60–75 miles per hour—through residential areas with

bystanders, including children, around.  *Id.*  After his arrest,  Mr. Dukewits admitted he had

escaped from the re-entry center and explained he'd fled because had tested positive for

methamphetamine.  *Id.* at 6 (PSR ¶ 20).  He also admitted to committing the robbery and casing

two other banks.  *Id.* (PSR ¶ 21).

Under the 2016 Guidelines Manual, Mr. Dukewits's base offense level for Count 1—

escape from custody—was 13.  *Id.* at 7 (PSR ¶ 28).  And his base offense level for Count 2—

bank robbery and incidental crimes—was six.  *Id.* (PSR ¶ 34).  Sentencing Guideline

§ 2B1.1(b)(15) increased Mr. Dukewits's Count 2 offense level to 14 because of the car chase,

which "involved the defendant's conscious or reckless risk of death or serious bodily injury."  *Id.*

(PSR ¶ 35).  Because Mr. Dukewits accepted responsibility for the offense and assisted

authorities, his offense level was reduced by three, to a total offense level of 13.  *Id.* at 8 (PSR

¶ 47).

Mr. Dukewits also had a long criminal history.  His past criminal convictions resulted in a

subtotal criminal history score of six.  *Id.* at 15 (PSR ¶ 68).  Because Mr. Dukewits committed

the offense while under a criminal justice sentence for the 2010 armed bank robbery conviction,

the 2016 Guidelines added two criminal history points.  *Id.*  So, Mr. Dukewits had a criminal

history score of eight, which established a criminal history category of IV.  *Id.* (PSR ¶ 69).

In sum, given "a total offense level of 13 and a criminal history category of IV," the 2016

Guidelines Manual produced a recommended sentence of 24–30 months.  *Id.* at 20 (PSR ¶ 107).

The parties' plea agreement proposed a "total controlling sentence for Counts 1 and 2 of 110

months imprisonment[.]"  Doc. 18 at 2.  Mr. Dukewits's Presentence Investigation Report

explains why the plea agreement called for a higher sentence than the Guidelines:  the

government "chose not to charge the defendant with Bank Robbery, a crime of violence."  Doc.

19 at 20 (PSR ¶ 110).  If the government *had* charged defendant with bank robbery, "he would have been subject to the Career Offender provisions as the defendant has two other prior bank robbery convictions."  *Id.*  That would've yielded an offense level of 29 and, given Mr. Dukewits's Criminal History Category of IV, the guideline range would've increased to 151 to 188 months.  *Id.*

In 2018, the court sentenced Mr. Dukewits to 24 months in prison on his Count 1 conviction for escape.  The court specified that this term in prison must run consecutive to his 86-month sentence on Count 2, a conviction for Bank Robbery and Incidental Crimes under 18 U.S.C. § 2113(b).  Together, the two sentences produced a controlling term of 110 months in custody.  *See* Doc. 21 at 2.  This sentence followed the binding plea agreement under Fed. R. Crim. P. 11(c)(1)(C), which the court accepted.  Doc. 18 (Plea Agreement); Doc. 19 at 4 (PSR ¶ 8).

Earlier this year, Mr. Dukewits requested the court to reduce his sentence.[1]  His motion relies on Amendment 821 to the United States Sentencing Guidelines.  The defendant correctly notes that he had received two "status points" under U.S.S.G. § 4A1.1(d).  *See* Doc. 27 at 1; *see also* Doc. 19 at 15 (PSR ¶ 68).  Reducing his criminal history points from eight to six proved consequential because the reduction derivatively lowered his Criminal History Category from Category IV to III.  Combined with his Total Offense Level—13—the reduced Criminal History

---

[1]    The Federal Public Defender submitted Mr. Dukewits's request to the court as part of a larger batch of requested reductions supported by both that office and the United States Attorney's Office.  It did not, in other words, formally file a motion on the CM/ECF record is this case.  The court responded to this batch request, as it applied to this defendant, with a short Order.  It expressed the court's reservations about reducing this defendant's sentence and invited the parties to respond.  *See* Doc. 25 at 3 ("By this Order, the court gives notice of its reservations [about the request to reduce] and directs the government and FPD to confer about how they propose to proceed.").  The Federal Public Defender responded with a Memorandum in Support of Sentence Reduction (Doc. 27) which the court treats as a motion seeking a reduced sentence under § 3582(c)(2).

Category reduced his Guideline Range from 24 to 30 months (based on 13/IV) to an Amended Guideline Range of 18 to 24 months (13/III).

Though the court sentenced defendant based on a binding plea agreement reached under Fed. R. Crim. P. 11(c)(1)(C), he argues that he still qualifies for a sentence reduction under Amendment 821. His motion theorizes that an 11(c)(1)(C) plea agreement is "'based on' the defendant's Guidelines range so long as that range was part of the framework the district court relied on in imposing the sentence or accepting the agreement." Doc. 27 (quoting *Hughes v. United States*, 584 U.S. 675, 685 (2018)). While the correlation between defendant's actual sentence and his original Guidelines Range is tenuous—110 months (actual sentence) vs. 24 to 30 months (Guideline Range at sentencing)—the court generally agrees with defendant's proposition. It's *not* clear "that the guidelines played no role in the Rule 11(c)(1)(C) agreement and sentence," so the court concludes that the defendant is eligible for a reduced sentence under Amendment 821.

That's so because Amendment 821 amends the "status points" under Sentencing Guideline § 4A1.1. Effective November 1, 2023, Part A of Amendment 821 limits the effect of criminal history points, or "status points." U.S. Sent'g Guidelines Manual § 4A1.1(e) (U.S. Sent'g Comm'n 2023). The amendment replaced § 4A1.1(d), which had required a two-point increase for offenses committed while defendant served a criminal justice sentence, with a modified § 4A1.1(e), which eliminates those two status points if the defendant received six or fewer criminal history points and "committed the instant offense while under any criminal justice sentence[.]" *Id.* As just mentioned, this two-point reduction lowers Mr. Dukewits's guideline range.

But eligibility under Amendment 821 doesn't end the analysis.

## II.     Controlling Legal Principles

In 18 U.S.C. § 3582(c)(2), Congress established that the reduction analysis doesn't end at eligibility.  Specifically,

> (2)      in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

So, Congress has instructed courts to consider both § 3553(a) sentencing factors and the Sentencing Commission's policy statements, too.  It's the § 3553(a) factors that matter here.

District courts in our Circuit have noted the difference between eligibility and reduction. Most recently, Chief Judge Johnson from New Mexico, quoting the Supreme Court, explained the "two-step process" courts should apply to § 3582(c)(2) motions:

> Before granting or denying a sentence reduction based on a retroactive Guideline amendment, the Court must engage in a two-step process.  As the *Dillon* Court explained:  "At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. . . .  At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case."

*United States v. Madrid*, No. 18-2325-WJ, 2024 WL 2763764, at *2 (D.N.M. May 30, 2024) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).  United States District Judge Stephen P. Friot applied the same framework in *United States v. Foust*, No. CR-18-0011-F, 2024 WL 1516116, at *3 (W.D. Okla. Apr. 8, 2024) (citing *United States v. Battle*, 706 F.3d 1313, 1317 (10th Cir. 2013)).  In sum, that defendant here is eligible for a sentence reduction is *necessary* but it's not necessarily *sufficient* for a reduced sentence.  Having concluded that

defendant is eligible for a sentence reduction, the court now turns to those § 3553(a) factors, "and determine[s] whether, in its discretion, the reduction authorized . . . at step one is warranted in whole or in part under the particular circumstances of the case." *Dillon*, 560 U.S. at 827.

## III.   Proposed Reduction and § 3553(a) Factors

### A.   Reduced Sentence Proposed by Defendant

Assessing the appropriateness of the putative reduction begins with understanding the reduction sought.  The defendant asks to reduce his sentence from a controlling term of 110 months—24 months on Count 1 consecutive to 86 months on Count 2—to a controlling term of 93 months.  Doc. 27 at 1.  His request gets to the 93 number by leaving his Count 1 sentence unchanged (24 months) and running Count 1's sentence consecutive to 69 months on Count 2. Defendant supports his request for a reduced sentence of 69 months on Count 2 with this mathematical reasoning:

> **Original sentence:**  86 months on Count 2 equals 2.86 times the high end (30 months) of his controlling Guideline Range at sentencing, *i.e.*, 30 months x 2.86 = 85.8 months
>
> **Proposed reduced sentence (after Amendment 821's adjustment):**  69 months on Count 2 equals 2.86 times the high end (24 months) of the Amended Guideline Range, *i.e.*, 24 months x 2.86 = 68.64 months

Adding the rounded 69 months on Count 2 to the unchanged 24 months on Count 1 produces the 93-month controlling term he seeks as a reduced sentence.  Finally, and as an alternative, defendant's motion asks to reduce his sentence "to the term the Court finds warranted by the § 3553(a) sentence factors."  Doc. 27 at 8.  In the end, the court finds that the sentencing factors don't support a reduced sentence and thus denies his motion.  The court explains why below.

**B.  § 3553(a) Factors**

In its seven subsections, § 3553(a) identifies 12 factors courts must use when identifying a sentence that strikes the overarching target of federal court sentences:  "sufficient, but not greater than necessary[.]"  18 U.S.C. § 3553(a).  The court has evaluated all 12 factors as they apply to this defendant now but concludes that four of them play the most prominent role here. The court identifies and applies those four factors in the following paragraphs.

**1.  <u>Nature and circumstances of the offense</u>**

One of defendant's two crimes of conviction and his related criminal history drive this factor.  The court recounts the offense in detail.

In November 2017, about ten days after escaping from a halfway house where he was serving out the final weeks of his sentence on a 2010 conviction, defendant presented himself to a teller at a federally insured credit union.  He told the teller, "[G]ive me all the money in the register."  Doc. 19 at 5 (PSR ¶ 16).  When the teller asked if defendant were serious, defendant confirmed he was.  *Id.*  During this exchange, the defendant "kept his right hand in the pocket of his sweatshirt."  *Id.*  When the teller complied with defendant's demand, he left with about $1,200 of the credit union's money.  *Id.*  The defendant left the credit union driving a Pontiac at a "high rate of speed."  *Id.*  Things got worse for defendant the farther he got from the scene of his crime.

A member of the Topeka, Kansas Police Department began to follow defendant's Pontiac and, in sequence, here's what happened:

- Defendant began "making evasive maneuvers and driving recklessly[;]"

- Defendant failed to stop after the Officer activated his emergency light and siren;

- Defendant led the Officers on a "high speed chase" lasting about 10 minutes, reaching speeds in the 60–75 mph range;

- The fleeing Pontiac passed "through residential areas where bystanders including children were present[,]" and defendant "ran around vehicles, failed to stop at several stop signs and drove through yards"—though he slowed as he passed a school bus;

- Defendant swerved to evade stop sticks and "almost hit" an Officer who had placed the stop sticks on the roadway;

- Defendant struck an unoccupied police patrol car and, later, a retaining wall;

- When defendant's Pontiac became too disabled to drive, he was arrested; and

- He was arrested with a meth pipe in his possession.

Doc. 19 at 5–6 (PSR ¶¶ 17–19).  This conduct displays a troubling indifference for the safety of others, including children, other citizens just going about their regular business, and law enforcement officers.  Also, it manifests an increasing lawlessness as none of the defendant's earlier crimes involved flight.

## 2.  History and characteristics

Defendant has an extensive criminal history covering the years 1994–2017.  He was convicted as an adult for a felony he committed when 16 years old.  Most pertinent here, his earlier federal convictions include two convictions for bank robbery (one in 2002, producing an 88-month sentence, and the other in 2010).  The 2010 conviction occurred under ominous, and now familiar circumstances.  In 2008, Mr. Dukewits was completing his sentence on his 2002 bank robbery conviction while still in Bureau of Prisons' custody and designated to a halfway house nearing his sentence's end.  *Id.* at 13–15 (PSR ¶¶ 66, 67).  In this 2008 robbery, Mr. Dukewits used a cell phone connected by wires to a "yellow foam block which resembled a bomb."  *Id.* at 14 (PSR ¶ 67).  The 2002 and 2008 bank robberies are not his only convictions.

In the 2002 conviction, the defendant was also charged with four other bank robberies. *See id.* at 13–14 (PSR ¶ 66). More specifically, at sentencing in the current case he did not contest factual assertions that he had robbed four other banks—including one that he robbed *twice* during a six-week spree in late 2001. *Id.* (undisputed paragraphs of his Presentence Investigation Report in this case).

All this to say—Mr. Dukewits's history and characteristics favor leaving his existing sentence in place.

### 3.  <u>Adequate deterrence to criminal conduct</u>

The § 3553(a) factors require that a sentence "afford adequate deterrence to criminal conduct[.]" 18 U.S.C. § 3553(a)(2)(B). Fully served sentences have not deterred Mr. Dukewits from returning to almost identical criminal conduct. Under these circumstances, it's logical to conclude that a reduced sentence won't suffice, either. The court finds that a reduced sentence wouldn't deter criminal conduct adequately.

### 4.  <u>The need to protect the public from defendant's further crimes</u>

Congress also has instructed courts to impose sentences that "protect the public from further crimes of the defendant[.]" *Id.* § 3553(a)(2)(C). Mr. Dukewits emphasizes that he is now sober and, in all of his bank robbery offenses, "user quantities of drugs were present." Doc. 27 at 5. But Mr. Dukewits also explained his most recent bank robbery this way: "he was running out of money, was getting tired, and his urge to commit a robbery had increased. He also mentioned the movie *Heat* as motivation for all the prior bank robberies he had committed." Doc. 19 at 6 (PSR ¶ 20).

Mr. Dukewits's efforts at sobriety are laudable, but there's a discernible pattern to his past behavior. And the court won't gamble with public safety. He has presented a risk to the public

in the past and the court finds a realistic and fact-based likelihood that he may do so again in the future.  The court finds that this sentencing factor doesn't favor accelerating that risk.

### 5.   Other factors

Other sentencing factors—notably, the need for the sentence to reflect the seriousness of defendant's offense, the need to provide just punishment for it, and the need to promote respect for our laws—also disfavor a reduction.  Mr. Dukewits has committed a serious felony offense— an offense he has committed before, demonstrating a lack of respect for the law.  And the current offense involved aggravating factors, like a high speed car chase in a residential area.  Mr. Dukewits's current sentence provides just punishment.  A reduced sentence would not.  The court also notes that Mr. Dukewits's inmate discipline report includes a 2019 infraction for fighting with another person.  Doc. 27-2 at 1.  The circumstances already recited in subparagraphs 1-4 above explain why these other factors disfavor defendant's request.[2]

### 6.   Defendant's arguments

Defendant contends that the sentencing factors require the court to view him "as he is now."  Doc. 27 at 5.  Supporting this view of the law, defendant provides a personal letter explaining that his current sobriety separates him from what he's done in the past.  He won't face the dangers of addictions that have haunted him in prior trips to federal court, he asserts.  Doc. 27-1.  His attorney also notes that his inmate disciplinary record has improved significantly, and he admirably has completed a variety of programs while in BOP custody.

The court doesn't minimize these accomplishments in any respect.  And it wholeheartedly commends any development that projects a different path for the future.  The court also urges the

---

[2]     This is not to say that every sentencing factor disfavors a reduction.  Several of them are neutral.  For instance, "the need to provide restitution" isn't pertinent.  And other factors likewise play little to no role in the evaluation.

defendant to remain steadfast in his changed ways.  Nonetheless, the court finds these developments are insufficient to offset the influence of the aggravating factors mitigating against a reduction.

## IV.  Conclusion

In sum, the court finds that a reduced sentence isn't faithful to the factors that § 3582(c)(2) directs the court to consider.  Mr. Dukewits committed a dangerous, senseless felony offense.  The court finds that a reduced sentence wouldn't produce a sentence that is, on balance, sufficient to serve the sentencing factors.  The court thus holds that defendant, though eligible for a reduced sentence, should not receive one.  It denies his request.[3]

**THEREFORE, IT IS HEREBY ORDERED** that defendant's Motion to Reduce his sentence under 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines is denied.

**IT IS SO ORDERED.**

**Dated this 15th day of July, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

---

[3]     Because the court has jurisdiction to grant this motion but declines to do so, the court denies his motion.  *See Madrid*, 2024 WL 2763764, at *4 (denying motion where defendant was eligible for sentence reduction but § 3553 sentencing factors didn't favor reduction).